1

2

3 **UNITED STATES DISTRICT COURT**

4 **NORTHERN DISTRICT OF CALIFORNIA**

5 **SAN JOSE DIVISION**

6

| | |
|---|---|
| 7 United States of America, | Case No. <u>5:15-cr-00206-BLF-1</u> |
| Plaintiff, | |
| 8 | |
| 9 v. | **ORDER GRANTING MOTION TO DISMISS INDICTMENT** |
| CHRISTIAN CABRERA-OCHOA, | |
| 10 | [Re: ECF 39] |
| Defendant. | |
| 11 | |

12        Defendant Christian Cabrera-Ochoa is charged with one count of violating 8 U.S.C. §§

13 1326(a)-(b), which prohibit illegally re-entering the United States after being removed or deported.

14 *See* Indictment, ECF 8.  Cabrera-Ochoa moves to dismiss the indictment on the grounds that his

15 prior removal orders cannot serve as predicates for this illegal reentry prosecution.  *See* Mot. at 1,

16 ECF 39.  The Court finds that Cabrera-Ochoa has satisfied the requirements for collaterally

17 attacking both his 2007 and 2008 removal orders under 8 U.S.C. § 1326(d), and GRANTS his

18 motion to dismiss.[1]

19 **I.       BACKGROUND**

20         **A. Childhood and Adolescence**

21         Cabrera-Ochoa was born on Feb. 3, 1990, in Mexico.  *See* ███████

22 ████████████████████████[2]; Cabrera-Ochoa Decl. ¶ 2, Def.'s Ex. A,

23 ECF 39-1.  He has never had a relationship with his father, and after Cabrera-Ochoa's birth, his

24

---

25 [1] Cabrera-Ochoa requested an evidentiary hearing if the Court was unable to resolve his motion
based on the parties' written submissions.  *See* Mot. at 1, ECF 39.  An evidentiary hearing is
26 unnecessary, and Cabrera-Ochoa did not renew his request at oral argument.  The request is
27 DENIED.

[2] The Court has redacted the portions of the Order that discuss Cabrera-Ochoa's confidential
28 juvenile court records.  *See* Cal. Welf. & Inst. Code § 827.

United States District Court
Northern District of California

United States District Court
Northern District of California

mother left him in Mexico and came to the United States. *See* Cabrera-Ochoa Decl. ¶ 2, Def.'s Ex. A. When Cabrera-Ochoa was five or six years old, he came to the United States with his mother's friends, using a fake passport. *See* Informal Transcript of May 24, 2007 Removal Hearing at 9-10, 10 Def.'s Ex. O, ECF 41 ("2007 Transcript").

Once Cabrera-Ochoa rejoined his mother, his life was marked by abuse and neglect: his mother was physically, verbally, and emotionally abusive, and frequently beat him with cables and belts. *See* Cabrera-Ochoa Decl. ¶ 5, Def.'s Ex. A, ECF 39-1.



In addition to the physical abuse, Cabrera-Ochoa's mother often kicked him out of their home, told him she hated him and regretted having him, and threatened to hurt him and burn his hands on the stove. *See* Cabrera-Ochoa Decl. ¶ 7, Def.'s Ex. A, ECF 39-1. Cabrera-Ochoa was so scared of his mother that he would run away from home for two to three days at a time. *See id.* ¶ 5. When he was twelve, he gravitated toward gangs for support, occasionally staying with an older man that made space in his house for runaway children. *See id.* at ¶ 8.



The situation improved somewhat in late 2005 and early 2006.

United States District Court
Northern District of California



2007 Transcript at 13, Def.'s Ex. O, ECF 41.

One day later—and just ten days after Cabrera-Ochoa's seventeenth birthday—ICE served him with a Notice to Appear ("NTA"), on Feb. 13, 2007. *See* Feb. 13, 2007 Notice to Appear at 1, Def.'s Ex. M, ECF 39-1 ("2007 NTA").

**B. 2007 Removal Proceedings**

The 2007 NTA alleged that Cabrera-Ochoa was removable under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act because he was not a United States citizen or national; was a native and citizen of Mexico, entered the United States at an unknown location, and was not then admitted or paroled after inspection by an Immigration Officer. *See* 2007 NTA at 1, Def.'s Ex. M, ECF 39-1. During the removal proceedings, Cabrera-Ochoa was taken to Indiana and held in an Office of Refugee Resettlement facility for over three months, until he had a removal hearing on May 24, 2007.

At the removal hearing, the immigration judge ("IJ") conducted a group hearing with Cabrera-Ochoa and two other boys, and then an individual hearing. *See* 2007 Transcript, Def.'s Ex. O, ECF 41. During the group hearing, the IJ briefly confirmed that the respondents had received copies of their NTA; asked if they had seen a Know Your Rights presentation; and

1    checked if they had attorneys. *See id.* at 1-6. When the respondents said that they did not know if

2    they had lawyers, the IJ told them that a lawyer from the National Immigration Justice Center

3    could talk to them, but would not be available until another day. *See id.* at 3. She asked if any of

4    the respondents wanted to continue their cases so that they could have time to meet with the

5    lawyer, and none of them did. *See id.* at 3-4.

6           The IJ then held an individual hearing with Cabrera-Ochoa, where she reviewed the

7    allegations in the NTA. Crucially, she asked about his entry into the United States, and Cabrera-

8    Ochoa said that he "used a passport with different names." *Id.* at 10. In a moment of apparent

9    distraction, however, the IJ found that Cabrera-Ochoa had admitted to the allegation of entering

10   without being inspected or admitted. *See id.* at 11, 17. She informed him that "it [didn't] seem to

11   [her] that there's any relief from removal besides perhaps um voluntary departure." *Id.* at 12. She

12   then questioned him about his juvenile criminal history and his gang activities. *Id.* at 12-16. The

13   Government stated that it "would oppose voluntary departure," in part because of Cabrera-

14   Ochoa's "gang affiliation and membership issues." *Id.* at 16. The IJ, however, gave Cabrera-

15   Ochoa credit for being "honest" with her and telling her "the truth about [his] gang affiliation,"

16   and granted him voluntary departure. *Id.* At no point did the IJ raise the possibility of eligibility

17   for Special Immigrant Juvenile Status ("SIJS"), a form of immigration relief available for abused,

18   abandoned, or neglected minors, despite Cabrera-Ochoa's youth, long wardship history, and his

19   testimony about his difficult relationship with his mother. *See id.* at 13.

20          After the hearing, counselors at the ORR juvenile detention facility spoke with Cabrera-

21   Ochoa about the voluntary departure he had received. *See* Cabrera-Ochoa Decl. ¶ 15, Def.'s Ex.

22   A, ECF 39-1. Cabrera-Ochoa did not understand what voluntary departure was or why it might be

23   helpful for him, and the counselors told him not to use his money or his aunt's money to pay for

24   his fare to Mexico, because either way, he was getting deported. *See id.* The counselors told him

25   to save any money his aunt sent him so that he could use it in Mexico. *See id.* Cabrera-Ochoa

26   then received some money from his aunt and asked to be deported. *See id.* at ¶¶ 15-16.

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

### C.  Nov. 2008 Removal Proceedings

After being deported to Mexico, Cabrera-Ochoa was taken to a group home in Ciudad Juarez until his mother was found.  *See* Cabrera-Ochoa Decl. ¶ 17, Def.'s Ex. A, ECF 39-1.  He stayed with her on and off for a few months, but she was not supportive of him.  *See id.*  Sometime in 2008, Cabrera-Ochoa returned to the United States.  *See* Sept. 4, 2008 Notice to Appear, Pl.'s Ex. A, ECF 48-1.  On Sept. 1, 2008, he was arrested for vehicle theft.  *See* Rap Sheet at 6, Def.'s Ex. K, ECF 39-1.  ICE served him with a Notice to Appear shortly afterward.  *See* 2008 NTA, Pl.'s Ex. A, ECF 48-1.  While removal proceedings were pending, Cabrera-Ochoa was arrested again and charged with participating in a criminal street gang, promoting a criminal street gang, possession of a dangerous weapon, and possession of stolen property, but all charges were dismissed.  *See* Rap Sheet at 6, Def.'s Ex. K, ECF 39-1.  ICE then served a second Notice to Appear on Oct. 17, 2008.  *See* Oct. 17 2008 Notice to Appear, Def.'s Ex. T, ECF 39-1.

Cabrera-Ochoa received a hearing before an IJ in November 2008, and this hearing, like the previous year's, consisted of a group hearing and an individual hearing.  At the group hearing, the IJ verified that each respondent had received a Notice to Appear and a copy of the EOIR list of free legal service providers.  *See* Informal Transcript of Nov. 6, 2008 Removal Hearing at 1-3, Def.'s Ex. V, ECF 39-1 ("2008 Transcript").  The IJ explained the right to counsel, the right to appeal, and other procedural rights.  *See id.* at 4-6.  In Cabrera-Ochoa's individual hearing, the IJ asked if Cabrera-Ochoa wanted time to find an attorney, and Cabrera-Ochoa declined.  *See id.* at 6.  The IJ then reviewed the allegations in the Notice to Appear and asked Cabrera-Ochoa if they were true.  *See id.* at 7-8.  The IJ also asked Cabrera-Ochoa about his previous removal proceedings, and whether he had previously been charged with entering without being inspected or admitted.  *See id.* at 8.  Cabrera-Ochoa said, "Yes."  *Id.*  The IJ then stated that because Cabrera-Ochoa had previously received voluntary departure, he could not receive it again, and there appeared to be no other relief available.  *See id.*  The IJ found that Cabrera-Ochoa was removable and asked if Cabrera-Ochoa wanted to appeal his decision.  *See id.* at 8-9.  Cabrera-Ochoa's response is unintelligible on the audio recording, but he appears to have indicated that he did not want to appeal, and so he was ordered removed.  *See id.* at 9; Order of the Immigration Judge,

1    Def.'s Ex. W, ECF 39-1.

2    **D. Dec. 2008 and 2014 Removal Proceedings**

3    In December 2008 and August 2014, Cabrera-Ochoa was removed pursuant to

4    reinstatements of the Nov. 6, 2008 removal order. *See* Notices of Intent/Decisions to Reinstate

5    Prior Order, Def.'s Ex. X, ECF 39-1.

6    **E. Current Indictment**

7    Cabrera-Ochoa now is charged with violating 8 U.S.C. §§ 1326(a), (b) by illegally

8    reentering the United States without the permission of the Attorney General or the Secretary of

9    Homeland Security. *See* Indictment, ECF 8. He moves to dismiss this charge on the ground that

10    both his 2007 and 2008 removal orders were unlawful and cannot be the predicate for the Section

11    1326 illegal reentry charge.

12    **II.    LEGAL STANDARD**

13    "For a defendant to be convicted of illegal reentry under 8 U.S.C. § 1326, the Government

14    must establish that the defendant left the United States under order of exclusion, deportation, or

15    removal, and then illegally reentered." *United States v. Raya-Vaca*, 771 F.3d 1195, 1201 (9th Cir.

16    2014) (internal quotation marks and citation omitted). "A defendant charged under § 1326 has a

17    due process right to collaterally attack his removal order because the removal order serves as a

18    predicate element of his conviction." *Id.* (internal quotation marks and citation omitted).

19    8 U.S.C. § 1326(d) sets forth three requirements for collaterally attacking the underlying

20    deportation order in a Section 1326 case. The defendant must show that he or she (1) exhausted

21    administrative remedies; (2) was deprived of the opportunity for judicial review, and (3) the entry

22    of the order was fundamentally unfair. *See Raya-Vaca*, 771 F.3d at 1201 (citing 8 U.S.C. §

23    1326(d)). A defendants can establish the first two requirements by showing that he or she was

24    denied judicial review of the removal proceedings in violation of due process, or by "showing that

25    immigration officials in the underlying removal proceeding violated a regulation designed to

26    protect an alien's right to judicial review." *United States v. Gomez*, 757 F.3d 885, 892 (9th Cir.

27    2014). To satisfy the third requirement, the defendant bears the burden of establishing both that

28    the deportation process violated his or her due process rights and that the violation caused

United States District Court
Northern District of California

7

1    prejudice. *See Raya-Vaca*, 771 F.3d at 1201-02.

2    **III.    DISCUSSION**

3            This case involves two separate removal proceedings, each of which raises significant due

4    process concerns.  The Government states that it will rely only on the 2008 deportation order as a

5    basis for this Section 1326 prosecution and will not rely on the 2007 removal.[3]  *See* Opp. at 1,

6    ECF 48.  The Court nonetheless must assess the validity of both immigration proceedings,

7    however, because the validity of the 2008 deportation depends on the validity of the 2007 removal

8    proceedings.  The Court will first make findings of fact about the 2007 proceedings, then

9    determine whether Cabrera-Ochoa waived his right to appeal the 2007 and 2008 orders, and then

10   address the collateral Section 1326(d) attacks on the 2007 and 2008 orders.

11          **A.  Findings of Fact Regarding 2007 Removal Proceedings**

12              **1.  Cabrera-Ochoa Did Not Enter Without Inspection**

13          The Court finds that when Cabrera-Ochoa first came to the United States, he did not enter

14   without inspection.  The Court finds that Cabrera-Ochoa was inspected and admitted on a false

15   passport.  The only evidence on this issue is Cabrera-Ochoa's own testimony.

16          At the 2007 removal hearing, the IJ asked Cabrera-Ochoa, "So when you came to the

17   United States, did you come with [your mother]?   Who did you come to the U.S. with?

18   Anybody?"  2007 Transcript at 10, Def.'s Ex. O, ECF 41.

19          Cabrera-Ochoa answered, "Some, like my mom's friends, I don't know, I don't really

20   know, I used a passport with different names." *Id.*

21          Cabrera-Ochoa's statement that he "used a passport with different names" indicates that he

22   was inspected and admitted to this country, because there would have been no need for a passport

23   if he had entered without inspection.  Despite this testimony, however, the IJ found that Cabrera-

24   Ochoa had admitted the fourth factual allegation in his Notice to Appear, which alleged that after

25   entering the United States, Cabrera-Ochoa "[was] not then admitted or paroled after inspection by

26

27   ---
     [3] The Dec. 2008 and Aug. 2014 deportations cannot serve as the basis for this deportation
     proceeding, because they were reinstatements of the Nov. 2008 order rather than independent

28   deportation orders.  *See* Notices of Intent/Decisions to Reinstate Prior Order, Def.'s Ex. X, ECF
     39-1.

United States District Court
Northern District of California

an Immigration Officer." 2007 Transcript at 11, 17, Def.'s Ex. O, ECF 41; 2007 NTA at 1, Def.'s Ex. M, ECF 39-1.

The Government argues that the IJ correctly found that Cabrera-Ochoa had entered without inspection, because "one can infer that the judge determined that defendant's testimony was not credible." Opp. at 9, ECF 48. Cabrera-Ochoa argues that there is no basis to conclude that the IJ discounted his testimony, and suggests that she "either did not hear what he said, or forgot what he said, or did not realize its legal significance." Reply at 8, ECF 49.

Nothing in the record suggests that the IJ found Cabrera-Ochoa's testimony to be not credible. She did not comment on his testimony about how he entered the country and she did not make an explicit adverse credibility finding or even suggest that she found him to be not credible, on this issue or any other. Indeed, later in the hearing, the IJ questioned Cabrera-Ochoa about his gang history, and after he answered, she said, "Christian, I have to give you credit for something. You were honest at least with me. . . . So at least you told me the truth about your gang affiliation." 2007 Transcript at 16, Def.'s Ex. O, ECF 41. The IJ was able to observe Cabrera-Ochoa and assess his credibility, and this is the only statement she made about his credibility. Given that she found him to be credible during one part of his testimony, this Court will not infer that she found him to be not credible in another part, when nothing in the record suggests that. In the absence of any evidence contradicting Cabrera-Ochoa's testimony about his mode of entry or any suggestion that the IJ found his testimony to be not credible, the Court finds that Cabrera-Ochoa entered on a false passport and that the IJ's finding of entry without inspection was simply a mistake.

### 2. ORR Staff Dissuaded Cabrera-Ochoa From Voluntarily Departing

At the end of the 2007 hearing, the IJ granted Cabrera-Ochoa voluntary departure. *See* 2007 Transcript at 18, Def.'s Ex. O, ECF 41; Order of the Immigration Judge, Def.'s Ex. Q, ECF 39-1. The IJ also granted him two weeks to obtain the money necessary for voluntary departure. *See* 2007 Transcript at 18, Def.'s Ex. O, ECF 41. While Cabrera-Ochoa was being detained after his hearing, however, counselors at the ORR juvenile detention center dissuaded him from voluntarily departing. *See* Cabrera-Ochoa Decl. ¶ 15, Def.'s Ex. A, ECF 39-1. Cabrera-Ochoa

United States District Court
Northern District of California

declares,

> The counselors told me not to use my own money or my aunt's money to pay for my fare back to Mexico because either way I was getting deported to Mexico. The counselors told me to save any money that my aunt could send me so I could use it when I got to Mexico.

*Id.*

Cabrera-Ochoa makes this statement in a sworn declaration under penalty of perjury, and it is uncontroverted. The Government does not contest it or offer evidence to the contrary. The Court finds that after the IJ granted Cabrera-Ochoa voluntary departure, ORR counselors advised Cabrera-Ochoa not to take it and further advised him that whether he voluntarily departed or was deported, the consequences would be the same.

### B.  Waiver of Appeal

Turning to the Section 1326(d) challenges, the Court first considers whether Cabrera-Ochoa waived his right to make a collateral attack. *See United States v. Ramos*, 623 F.3d 672, 680 (9th Cir. 2010) ("[A]n alien cannot collaterally attack an underlying deportation order if he validly waived the right to appeal that order."). The 2007 removal order states that Cabrera-Ochoa waived his right to appeal, and in 2008, he waived his right to appeal at the IJ hearing. *See* Order of the Immigration Judge, May 21, 2007 at CABRERA000003, Def.'s Ex. Q, ECF 39-1 ("2007 IJ Order"); 2008 Transcript at 9, Def.'s Ex. V, ECF 39-1. The Court finds that both waivers are invalid.

#### 1.  2007 Waiver

The 2007 waiver of appeal is invalid. A valid waiver of the right to appeal must be "considered and intelligent," and the "government bears the burden of proving valid waiver in a collateral attack of the underlying removal proceedings." *Id.* (internal citations omitted). A waiver of the right to appeal cannot be considered and intelligent if the IJ presiding over the removal proceeding fails to inform the respondent that he or she has the right to appeal the removal order to the BIA. *See United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004). It is "mandatory" under the Due Process Clause that an IJ inform an alien of his or her ability to appeal a removal order during a removal proceeding. *Id.* (citing *United States v. Arce–*

1    *Hernandez*, 163 F.3d 559, 563 (9th Cir. 1998)). In the 2007 removal hearing, the IJ neglected to

2    inform Cabrera-Ochoa of his right to appeal, much less obtain an explicit waiver from him. *See*

3    2007 Transcript, Def.'s Ex. O, ECF 41. Accordingly, even though the removal order says,

4    "Appeal: WAIVED (A/I/B)," and "WAIVED" and "B" are circled, that waiver is invalid. *See*

5    2007 IJ Order at CABRERA000003, Def.'s Ex. Q, ECF 39-1. The Government does not argue

6    otherwise, having expressly declined to oppose Cabrera-Ochoa's motion on the validity of the

7    2007 proceeding. *See* Opp. at 1, ECF 48.

8                              **2. 2008 Waiver**

9            In 2008, in contrast, the IJ explained the right to appeal to Cabrera-Ochoa during a group

10   hearing. *See* 2008 Transcript at 5, Def.'s Ex. V, ECF 39-1. Then, in Cabrera-Ochoa's individual

11   hearing, the IJ informed Cabrera-Ochoa that he was not eligible for voluntary departure because

12   he had previously been granted voluntary departure, and that there "appear[ed] to be no other

13   relief available." *Id.* at 8. The IJ then asked, "Do you want to appeal my decision to a higher

14   court[?]" *Id.* at 9. Cabrera-Ochoa's response is unintelligible on the audio tape of the hearing, but

15   after he responded, the IJ said, "This decision then is final," and so presumably Cabrera-Ochoa

16   indicated that he did not want to appeal. *Id.*

17          Cabrera-Ochoa now argues that his waiver of appeal was not considered and intelligent

18   because the IJ did not advise him that he was apparently eligible for SIJS, and incorrectly advised

19   him that he was ineligible for a second grant of voluntary departure. *See* Mot. at 29, ECF 39. The

20   Government argues that the waiver is valid because he was not apparently eligible for either SIJS

21   or voluntary departure, and so the IJ was not obligated to inform him of SIJ or voluntary departure

22   in order for the appeal waiver to be valid. *See* Opp. at 13-14, ECF 48.

23          The Court finds that in 2008, Cabrera-Ochoa was not apparently eligible for SIJS. The

24   Court also finds, however, that Cabrera-Ochoa was eligible for voluntary departure, and because

25   the IJ incorrectly advised him that he was not, his appeal waiver was not considered and

26   intelligent.

27                        **a.   Apparent Eligibility for SIJS in 2008**

28          Cabrera-Ochoa argues that his waiver of appeal was invalid because the IJ did not advise

United States District Court
Northern District of California

1   him that he was apparently eligible for SIJS. *See* Mot. at 29, ECF 39.  He was not, however,

2   apparently eligible for SIJS, and the IJ was not required to advise him of it.

3          In order for a waiver of appeal to be considered and intelligent, if "the record contains an

4   inference that the petitioner is eligible for relief from deportation, 'the IJ must advise the alien of

5   this possibility and give him the opportunity to develop the issue.'" *United States v. Arrieta*, 224

6   F.3d 1076, 1079 (9th Cir. 2000) (quoting *Moran-Enriquez v. INS*, 884 F.2d 420, 422–23 (9th Cir.

7   1989)).  This requirement is "mandatory." *Arrieta*, 224 F.3d at 1079.  An IJ's failure to advise an

8   alien of his or her right to apply for relief from deportation is "a due process violation that

9   deprive[s] the alien of judicial review, presumably because an alien who is not made aware that he

10  has a right to seek relief necessarily has no meaningful opportunity to appeal the fact that he was

11  not advised of that right." *Id.*  "Accordingly, where the record, 'fairly reviewed by an individual

12  who is intimately familiar with the immigration laws—as IJs no doubt are—raises a reasonable

13  possibility that the petitioner may be eligible for relief, the IJ must inform the alien of this

14  possibility and give him the opportunity to develop the issue.'" *United States v. Muro-Inclan*, 249

15  F.3d 1180, 1183-84 (9th Cir. 2001) (quoting *Moran-Enriquez*, 884 F.2d at 423).  But IJs "are not

16  expected to be clairvoyant; the record before them must fairly raise the issue." *Muro-Inclan*, 249

17  F.3d at 1184 (quoting *Moran-Enriquez*, 884 F.3d at 422).

18          In 2008, there were several requirements for SIJS eligibility.  The one most relevant here is

19  that the SIJS applicant must have been declared dependent on a juvenile court.  *See* 8 C.F.R. §

20  204.11(c); *see also* 8 U.S.C. 1101(a)(27)(J) (2007).  In California, "[to] become a 'dependent

21  child' subject to jurisdiction under the dependency statutes, a person must be under 18 years of

22  age." *In re K.L.*, 210 Cal. App. 4th 632, 640 (2012).  Cabrera-Ochoa's birthday is Feb. 3, 1990,

23  and so he was already 18 years old at the time of the 2008 deportation proceeding.  The juvenile

24  court thus could not have exerted jurisdiction over him and could not have declared him a

25  dependent.

26          Cabrera-Ochoa argues that the juvenile court could have exercised jurisdiction over him

27  for dependency purposes based on an equitable tolling theory, because he had received ineffective

28  assistance of counsel in his juvenile delinquency matter.  *See* Mot. at 33, ECF 39; Reply at 2-3,

United States District Court
Northern District of California

ECF 49.[4]  This argument is unpersuasive: the limit on the juvenile court's jurisdiction is not a statute of limitations, and cannot be tolled.  Cabrera-Ochoa's novel theory is unsupported by any case authority even remotely persuasive on this point.

### b.  Eligibility for Voluntary Departure in 2008

Cabrera-Ochoa more persuasively argues that his waiver of appeal was invalid because the IJ incorrectly advised him that he was ineligible for a second grant of voluntary departure.  *See* Mot. at 29-30, ECF 39.  He was in fact eligible, and so the IJ's incorrect statement invalidates his waiver of appeal.

A waiver of appeal is not considered and intelligent if the IJ incorrectly advises the alien about the law.  In *United States v. Ahumada-Aguilar*, Ahumada-Aguilar was ineligible for a visa to return to the United States, because he had been convicted of drug possession.  295 F.3d 943, 950 (9th Cir. 2002).  The IJ incorrectly informed him, however, that he could ask for special permission to return to the United States after being deported, and based on this faulty advice, Ahumada-Aguilar waived his right to appeal the deportation order.  *See id.*  His waiver, "based on an IJ's erroneous interpretation of the impact on a respondent's right of lawful reentry into the United States [was] not knowing and intelligent."  *Id.*

In the 2008 hearing, the IJ ruled that Cabrera-Ochoa was ineligible for voluntary departure because he had received voluntary departure in 2007, after entering without being inspected or admitted.  *See* 2008 Transcript at 9, Def.'s Ex. V, ECF 39-1.  This appears to be based on 8 U.S.C. § 1229c(c), which prohibits granting voluntary departure to an alien who has previously received voluntary departure "after having been found inadmissible under section 1182(a)(6)(A)."  8 U.S.C. § 1182(a)(6)(A) states that an alien "present in the United States without being admitted or

---

[4] Cabrera-Ochoa submits the declaration of Lara Vinnard, an attorney at the Federal Public Defender's office, to support his argument.  See Vinnard Decl., Def.'s Ex. Y, ECF 39-1.  The declaration is hearsay, however, as it summarizes Vinnard's conversations with several juvenile and immigration attorneys and offers those attorneys' opinions on legal matters.  See id.  The Court therefore does not consider the declaration.  Cabrera-Ochoa argues that Fed. R. Evid. 104 states that the Court "is not bound by evidence rules" when deciding "any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible," but Rule 104 does not stretch so far as to completely abolish the rules against hearsay.  See Reply at 15, ECF 49 (quoting Fed. R. Evid. 104).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    paroled, or who arrives in the United States at any time or place other than as designated by the

2    Attorney General, is inadmissible." 8 U.S.C. § 1229c(c) thus bars granting voluntary departure to

3    an alien only if he or she previously received voluntary departure after entering without

4    inspection.

5         As discussed above, Cabrera-Ochoa did not enter without inspection prior to the 2007

6    grant of voluntary departure. *See supra* at 8-9.  Instead, when he came to the United States as a

7    five-year-old child, he entered on a false passport. *See id.*  Although the 2007 IJ found that

8    Cabrera-Ochoa had admitted to the NTA's allegation of entry without inspection, that was

9    incorrect; Cabrera-Ochoa did not admit that during the 2007 hearing, and in fact testified to the

10   contrary, and the IJ's finding was mistaken.  Because Cabrera-Ochoa had not actually entered

11   without inspection prior to receiving voluntary departure in 2007, he was not inadmissible under 8

12   U.S.C. § 1182(a)(6)(A) in 2008, and 8 U.S.C. § 1229c(c)'s prohibition on a second grant of

13   voluntary departure did not apply to him.  This is so because in 2008, the IJ was in possession of

14   the entire immigration file.  The Court finds that he either had that record or could have obtained

15   his agency's records upon a simple request.  A review of the 2007 proceedings, upon which he

16   based his pronouncement of ineligibility for voluntary departure, would have revealed the

17   mistaken finding upon which the 2007 IJ relied.  Where an IJ makes a statement of ineligibility

18   based on the agency's own records, he is deemed to have considered the entire record and cannot

19   put on blinders so that he considers only a portion of the record, to the detriment of the individual

20   before him.  The IJ's statement that Cabrera-Ochoa was ineligible for a second grant of voluntary

21   departure was an affirmative misstatement of the relief available to him.  After informing Cabrera-

22   Ochoa that he was ineligible for voluntary departure, the IJ asked Cabrera-Ochoa if he wanted to

23   appeal this decision, and Cabrera-Ochoa waived appeal.  *See* 2008 Transcript at 9, Def.'s Ex. V,

24   ECF 39-1.  As in *Ahumada-Aguilar*, the IJ's erroneous statement of the law makes Cabrera-

25   Ochoa's waiver of appeal not considered and intelligent.

26   **C. 2007 Immigration Proceeding**

27        Having found that Cabrera-Ochoa's waivers of appeal were invalid and do not bar this

28   collateral attack, the Court now addresses the validity of the 2007 immigration proceeding under 8

United States District Court
Northern District of California

1    U.S.C. § 1326(d).  The Court finds that all three Section 1326(d) requirements are satisfied and

2    that the 2007 removal order is invalid.

3                    **1.  Section 1326(d)(1) and (2)**

4            Cabrera-Ochoa has satisfied the first two 1326(d) requirements by showing that the IJ

5    failed to inform him that he was eligible for SIJS.  The United States does not contest his

6    arguments.

7            The first Section 1326(d) requirement is administrative exhaustion.  *See* 8 U.S.C. §

8    1326(d)(1).  A defendant is "exempted from the exhaustion requirement in 8 U.S.C. § 1326(d)(1)"

9    if an immigration judge fails to inform him that he was eligible for relief from deportation.  *United*

10   *States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1049 (9th Cir. 2004).  The second Section 1326(d)

11   requirement is deprivation of the opportunity for judicial review.  *See* 8 U.S.C. § 1326(d)(2).  A

12   failure to advise an alien of the right to apply for relief from deportation deprives him of judicial

13   review, "because an alien who is not made aware that he has a right to seek relief necessarily has

14   no meaningful opportunity to appeal the fact that he was not advised of that right."  *United States*

15   *v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000).

16           As discussed at greater length in the next section, Cabrera-Ochoa was eligible for SIJS

17   relief in 2007.  However, the transcript of the removal hearing shows that the IJ did not inform

18   him of his eligibility.  *See* 2007 Transcript, Def.'s Ex. O, ECF 41.  Rather, the IJ stated, "[I]t

19   doesn't seem to me that there's any relief from removal besides perhaps um voluntary departure."

20   *Id.* at 12.  Because the IJ did not inform Cabrera-Ochoa that he was eligible for SIJS, Cabrera-

21   Ochoa is exempted from Section 1326(d)(1) and has satisfied Section 1326(d)(2).

22                   **2.  Section 1326(d)(3)**

23           The third Section 1326(d) requirement has two parts: Cabrera-Ochoa must first show that

24   the deportation process violated his due process rights, and second, that the violation prejudiced

25   him. *See Raya-Vaca*, 771 F.3d at 1201-02.  The Court finds that Cabrera-Ochoa has satisfied both

26   parts of Section 1326(d)(3).

27                        **a.  Due Process Violation**

28           Cabrera-Ochoa argues that the 2007 proceeding violated due process in several ways: (1)

United States District Court
Northern District of California

1   the IJ failed to inform him of his apparent eligibility for SIJS; (2) he should have been appointed

2   counsel; (3) his waiver of the right to counsel was not knowing and voluntary; (4) the dual service

3   rule articulated in *Florez-Chavez v. Ashcroft*, 362 F.3d 1150 (9th Cir. 2004), supports the

4   appointment of counsel; (5) the IJ did not exercise particular care in assuring that Cabrera-Ochoa

5   understood the legal consequences of the facts he admitted; and (6) his waiver of appeal was

6   invalid. *See* Mot. at 16-30, 34, ECF 39.  Some of these arguments are persuasive; others are not.

7           First, the IJ's failure to inform Cabrera-Ochoa of his apparent eligibility for SIJS violated

8   due process.  As previously discussed, an IJ is required to advise an alien of his or her right to

9   apply for relief from deportation where the record raises a "reasonable possibility that the

10  petitioner may be eligible for relief." *Muro-Inclan*, 249 F.3d at 1184 (quoting *Moran-Enriquez*,

11  884 F.3d at 423).  SIJS is a form of relief available to certain minors.  At the time of Cabrera-

12  Ochoa's 2007 hearing, in order to be eligible for SIJS, the applicant had be less than 21 years old;

13  be unmarried; have been declared dependent upon a juvenile court; have been deemed eligible by

14  the juvenile court for long-term foster care;  continued to be dependent upon the juvenile court and

15  eligible for long-term foster care; and have been the subject of judicial or administrative

16  proceedings in which it was determined that it would not be in the minor's best interest to be

17  returned to his or her country of nationality or the last habitual residence of the minor or his or her

18  parent(s). *See* 8 C.F.R. § 204.11(c); 8 U.S.C. § 1101(a)(27)(J) (2007).

19          The record before the IJ raised a reasonable possibility that Cabrera-Ochoa was eligible for

20  SIJS.  During the hearing, the IJ learned that Cabrera-Ochoa was 17 years old, unmarried, and as

21  the IJ herself stated, "an unaccompanied child in the custody of the Office of Refugee

22  Resettlement." 2007 Transcript at 12, 17, Def.'s Ex. O, ECF 41.  The IJ also learned that Cabrera-

23  Ochoa's mother had kicked him out, that he had run away from her, and that she was currently in

24  Mexico, and that he did not know his father's whereabouts. *See id.* at 10-13.

United States District Court
Northern District of California

1

2        ██████. This record more than fairly raised a reasonable possibility that Cabrera-Ochoa was

3    eligible for relief from deportation via SIJS; it virtually proclaimed his eligibility from the

4    rooftops.

5            Second, the immigration court was not required to appoint Cabrera-Ochoa counsel.  While

6    the issue of whether children, as a class, are entitled to appointed counsel under the Fifth

7    Amendment's Due Process Clause and the Immigration and Nationality Act is currently before the

8    Ninth Circuit, no court yet has found that appointed counsel was actually required in an

9    immigration proceeding.  *See J.F.M. v. Lynch*, Case Nos. 15-35738, 15-35739 (9th Cir. 2016); *see*

10   *also Aguilera-Enriquez v. INS*, 516 F.2d 565, 568 n.3 (6th Cir. 1975) (stating that appointed

11   counsel is necessary where "an unrepresented indigent alien would require counsel to present his

12   position adequately to an immigration judge," but holding that counsel was not required because

13   there was "no defense for which a lawyer could have helped").  In the absence of precedent, this

14   Court declines to find a due process right to appointed counsel in immigration proceedings.

15           Third, Cabrera-Ochoa's waiver of his right to counsel was not knowing and voluntary.

16   Individuals in removal proceedings have a Fifth Amendment due process right to counsel (at no

17   cost to the government).  *Tawadrus v. Ashcroft*, 364 F.3d 1099, 1103 (9th Cir. 2004).  In order for

18   a waiver of that right to be valid, an IJ must (1) ask whether the petitioner wishes counsel, (2)

19   determine a reasonable period for obtaining counsel, and (3) assess whether the waiver is knowing

20   and voluntary.  *See United States v. Ramos*, 623 F.3d 672, 682 (9th Cir. 2010).

21           In this case, the IJ did not assess whether Cabrera-Ochoa's waiver of counsel was knowing

22   and voluntary in either the group or individual hearings.  In the group hearing, the IJ asked

23   Cabrera-Ochoa and the two other boys if they had an attorney.  *See* 2007 Transcript at 2, Def.'s

24   Ex. O, ECF 41.  All three responded that they did not know.  *See id.* at 3.  The IJ told the boys that

25   Ms. Diaz, an attorney from the National Immigrant Justice Center, was available "to try to talk to

26   [them] to see if there's any relief from deportation that [they] might be eligible for," but that this

27   would require continuing their cases.  *Id.*  It is unclear from the transcript which of the boys

28   responded, but at least two of them indicated that they did not want to wait longer.  *See id.* at 3-4.

1   After urging the boys to wait to speak with an attorney, the IJ stated, "After hearing from me, no

2   one here wants time to try to talk to a lawyer, right?  Alright. . . . [T]hese individuals are all

3   insisting on proceeding today without counsel despite my admonitions to the contrary . . . ." *Id.* at

4   4, 6.

5           The IJ then conducted individual hearings.  In Cabrera-Ochoa's individual hearing, the IJ

6   asked, "[Y]ou remember me giving you all of your rights, that you have the right to an

7   attorney[?]"  *Id.* at 7.

8           Cabrera-Ochoa said, "Yes."  *Id.*  The IJ asked if he had any questions, and he said, "No."

9   *Id.*

10          The IJ asked once more, "[A]re you sure you don't want time to try and talk to a lawyer . .

11  . [?]"  *Id.*  This question caused some confusion as to whether or not Cabrera-Ochoa wanted time

12  to talk with a lawyer, and the IJ clarified, "You don't want a continuance."  *Id.* at 8.

13          Cabrera-Ochoa said, "I don't know [unintelligible]," and when the IJ asked what he

14  wanted, he said, "I want to get deported [unintelligible]."  *Id.* (brackets original).

15          The record shows that the IJ urged Cabrera-Ochoa to take a continuance and speak with

16  Diaz, the immigration attorney, multiple times, but that he refused.  What the record does not

17  show, however, is whether Cabrera-Ochoa understood his right to counsel, whether he understood

18  what an attorney could do for him, or even whether he knew if he had an attorney at all.  Cabrera-

19  Ochoa was an unrepresented minor in the immigration hearing, and in light of his youth and his

20  ambiguous responses to the IJ's questioning, the Court finds that his waiver of counsel was not

21  knowing and voluntary, as required by due process.  This finding is limited to the specific facts of

22  this case.  The Court expressly declines to rule whether minors can, under proper circumstances,

23  waive counsel, as that broader issue is not presented here.

24          Fourth, *Flores-Chavez v. Ashcroft* does not create a need for appointed counsel.  362 F.3d

25  1150 (9th Cir. 2004).  *Flores-Chavez* held that when a minor is released to the custody of an adult,

26  any notice of an immigration hearing must be served on the adult as well as the minor.  *Id.*

27  Cabrera-Ochoa argues that the principles underlying the dual service requirement support the need

28  for appointed counsel.  *See* Mot. at 25-27, ECF 39.  Be that as it may, there is not yet a right to

United States District Court
Northern District of California

1   appointed counsel in immigration proceedings in this circuit, and so the failure to serve an adult in

2   Cabrera-Ochoa's case is not a due process violation.

3       Fifth, the IJ's determination that Cabrera-Ochoa had admitted to the allegations in the

4   NTA, including entering without inspection, was incorrect, because Cabrera-Ochoa did not admit

5   to entering without inspection, and instead testified that he had entered on a false passport. *See*

6   *supra* at 8-9. The IJ's finding thus was an error. However, the cases and regulations that

7   Cabrera-Ochoa cites for his broader argument that the IJ should have taken particular care with

8   him as an unrepresented minor are inapposite. Cabrera-Ochoa points to 8 C.F.R. § 1240.10(c),

9   *Matter of Amaya-Castro*, 21 I & N Dec. 583, 587 (BIA 1996), and *Flores-Chavez*, 362 F.3d 1150

10  (9th Cir. 2004). *See* Mot. at 27-28, ECF 39. 8 C.F.R. § 1240.10(c) states that an IJ "shall not

11  accept an admission of removability from an unrepresented respondent who is. . . under the age of

12  18 and is not accompanied by an attorney or legal representative, a near relative, legal guardian, or

13  friend." It further states that "[w]hen, pursuant to this paragraph, the immigration judge does not

14  accept an admission of removability, he or she shall direct a hearing on the issues." 8 C.F.R. §

15  1240.10(c). The IJ followed this procedure with Cabrera-Ochoa: she did not request an admission

16  of removability from him but instead held an individual hearing and questioned him on the facts

17  underlying the NTA's allegations. *See* 2007 Transcript at 7-19, Def.'s Ex. O, ECF 41. *Matter of*

18  *Amaya-Castro* held that IJs must exercise "particular care" in determining the deportability of

19  unaccompanied and unrepresented minors under the age of 16, but Cabrera-Ochoa was 17 at the

20  time of the 2007 removal hearing. *See* 21 I & N Dec. at 587; 2007 Transcript at 8, Def.'s Ex. O,

21  ECF 41. *Flores-Chavez* dealt with notice requirements for a minor released to an adult's custody,

22  but Cabrera-Ochoa was in ORR custody at the time of the hearing. *See* 362 F.3d 1150 (9th Cir.

23  2004).

24      Sixth, Cabrera-Ochoa's waiver of appeal was invalid, as held above. *See supra* at 10-11.

25  The waiver violates due process because the IJ never informed Cabrera-Ochoa that he had the

26  right to appeal his removal order. *See* 2007 Transcript, Def.'s Ex. O, ECF 41; *see also United*

27  *States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004) ("It is mandatory under the Due

28  Process Clause that an IJ inform an alien of his or her ability to appeal a removal order during a

1    removal proceeding.") (internal quotation omitted).

2          In sum, Section 1326(d)(3)'s requirement of a due process violation is satisfied by the IJ's

3    failure to inform Cabrera-Ochoa of his eligibility for SIJS; Cabrera-Ochoa's unknowing and

4    involuntary waiver of counsel; and his invalid waiver of appeal.

5                                    **b.  Prejudice**

6          To satisfy the second part of Section 1326(d)(3), Cabrera-Ochoa must show "that 'he

7    suffered prejudice as a result of the defects' in the removal proceedings."  *United States v.*

8    *Valdez-Novoa*, 780 F.3d 906, 914 (9th Cir.), *cert. denied*, 135 S. Ct. 2913 (2015) (quoting *Ubaldo-*

9    *Figueroa*, 364 F.3d at 1048).  More specifically, because he alleges that the IJ's failure to provide

10   information about SIJS caused a due process violation, he must show prejudice by establishing

11   that it was plausible that he would have received that relief.  *See United States v. Cisneros-*

12   *Resendiz*, 656 F.3d 1015, 1018 (9th Cir. 2011).

13         At the time of the hearing, there were six requirements for SIJS eligibility.  *See* 8 C.F.R. §

14   204.11(c).  Cabrera-Ochoa met the first two—he was under 21 years old and unmarried—and it is

15   plausible that he would have satisfied the other four.  To meet those requirements, he would have

16   had to be declared dependent upon a juvenile court; be deemed eligible by the juvenile court for

17   long-term foster care; continued to be dependent upon the juvenile court and eligible for long-term

18   foster care; and have been the subject of judicial or administrative proceedings in which it was

19   determined that it would not be in the minor's best interest to be returned to his or her country of

20   nationality or the last habitual residence of the minor or his or her parent(s).  *See id.*

21         As an initial matter, because Cabrera-Ochoa was seventeen years old at the time of the

22   hearing, California's juvenile court would have been able to exert jurisdiction over him to make

23   the necessary findings.  *See In re K.L.*, 210 Cal. App. 4th at 640.  ("[to] become a 'dependent

24   child' subject to jurisdiction under the dependency statutes, a person must be under 18 years of

25   age").

26         Once the juvenile court exerted jurisdiction over Cabrera-Ochoa, it is plausible that it

27   would have declared him a dependent and deemed him eligible for long-term foster care.  It also is

28   plausible that he would have continued to be dependent upon the court and eligible for long-term

United States District Court
Northern District of California

20

foster care, and received a judicial or administrative determination that it would not be in his best interest to be returned to Mexico. █████████████████████████████████████ █████████████████████████. He did not have a relationship with his father. *See* Cabrera-Ochoa Decl. ¶ 2, Def.'s Ex. A, ECF 39-1.  His mother physically and emotionally abused him when he was in her custody, █████████████████████████████ ████████████████████████████████████████████. *See id.* ¶¶ 5-7; ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████. On one of the times she did take him on a furlough, she "kicked [him] out." 2007 Transcript at 13, Def.'s Ex. O, ECF 41.  Furthermore, Cabrera-Ochoa had lived in the United States since he was five years old and attended school here. *See id.* at 9-10.

In short, it is plausible that if Cabrera-Ochoa had been advised of the possibility of SIJS relief, he would have received it.  It also is plausible that barring the invalid waiver of counsel, he could have met with an attorney that could have advised him of this relief, since a pro bono immigration attorney actually was available to speak with him—she simply was not available on the day of the hearing. *See id.* at 3.  The 2007 immigration proceeding suffered from a host of due process errors that prejudiced Cabrera-Ochoa.  The 2007 removal order is invalid under Section 1326(d).

### D. 2008 Immigration Proceeding

Turning to the 2008 immigration proceeding, the Court finds that the 2008 removal order also is invalid under 8 U.S.C. § 1326(d).

#### 1. Section 1326(d)(1) and (2)

In addition to the methods described above, a defendant also may establish the administrative exhaustion and denial of judicial review requirements of Section 1326(d)(1)-(2) "by showing that he was denied judicial review of his removal proceeding in violation of due process."

United States District Court
Northern District of California

United States District Court
Northern District of California

1    *Gomez*, 757 F.3d at 892. "Obtaining an invalid waiver of the right to appeal a deportation order

2    violates due process," and the Court already has found that Cabrera-Ochoa's 2008 waiver of

3    appeal was invalid. *Id.* at 893; *see supra* at 11-14.

4              **2.  Section 1326(d)(3)**

5              The Court finds that Cabrera-Ochoa has satisfied both the due process violation and the

6    prejudice elements of Section 1326(d)(3).

7              **a.  Due Process Violation**

8              Cabrera-Ochoa argues that the 2008 proceeding violated due process because (1) the IJ did

9    not advise him that he was apparently eligible for SIJS; (2) his waiver of counsel was not knowing

10   and voluntary; and (3) his waiver of appeal was not considered and intelligent. *See* Mot. at 18-20,

11   25, 29-30, ECF 39.  The Government contests all three positions. *See* Opp. at 6-14, ECF 48.  Only

12   Cabrera-Ochoa's third argument is successful; the other two are not.

13             First, Cabrera-Ochoa was not apparently eligible for SIJS in 2008, and so the IJ was not

14   obligated to advise him of SIJS. *See supra* at 11-13.

15             Second, Cabrera-Ochoa's waiver of his right to counsel was knowing and voluntary.   In

16   order for a waiver of counsel to be valid, the IJ must (1) ask whether the petitioner wishes counsel,

17   (2) determine a reasonable period for obtaining counsel, and (3) assess whether the waiver is

18   knowing and voluntary. *See United States v. Ramos*, 623 F.3d 672, 682 (9th Cir. 2010).  At

19   Cabrera-Ochoa's group hearing, the IJ carefully explained that the respondents had the right to an

20   attorney and verified that each of them had received a list of free service providers. *See* 2008

21   Transcript at 3, Def.'s Ex. V, ECF 39-1.  The IJ also explained how the respondents could find an

22   attorney and said that if any of them wished to find an attorney, then he would set their case for

23   another day and provide time to find counsel. *See id.* at 4.  The IJ then asked whether each of the

24   respondents understood his right to have an attorney or representative assist him, and they

25   responded affirmatively. *See id.*  At the beginning of Cabrera-Ochoa's individual hearing, the IJ

26   asked if Cabrera-Ochoa wanted his case to be reset for another day so that he could have time to

27   find an attorney, and Cabrera-Ochoa said no. *See id.* at 6.  This extensive colloquy satisfies the

28   *Ramos* requirements.

United States District Court
Northern District of California

1    Cabrera-Ochoa argues that because the IJ incorrectly advised him that he was ineligible for

2    relief, he was not aware of the ways in which counsel could have helped him and so his waiver of

3    counsel was not knowing and voluntary. *See* Mot. at 25, ECF 39.  In support, he cites *United*

4    *States v. Cisneros-Rodriguez*, 813 F.3d 748 (9th Cir. 2015), and *Ramos*. *See id.*  The Government

5    responds that both cases are inapposite. *See* Opp. at 12, ECF 48.  The Court agrees: in *Cisneros-*

6    *Rodriguez*, Cisneros-Rodriguez's waiver of counsel was invalid because an ICE agent incorrectly

7    informed her that an attorney could not help her just before she executed her waiver of counsel.

8    813 F.3d at 757.  That did not happen here—while the IJ incorrectly advised Cabrera-Ochoa that

9    he was ineligible for relief, this happened after Cabrera-Ochoa's waiver of counsel, not before it.

10   In *Ramos*, the waiver of counsel was invalid because Ramos, who signed a stipulated removal

11   form waiving his right to counsel, did not receive the benefit of appearing before an IJ, was not

12   questioned by an IJ concerning the implications of proceeding without counsel, and crucially, "did

13   not receive a competent explanation of his rights in a language he could understand." 623 F.3d at

14   682.  Cabrera-Ochoa had a hearing before an IJ, where he received a thorough explanation of his

15   rights in a language he understood.

16       Third, Cabrera-Ochoa's invalid waiver of appeal violated due process because the IJ

17   affirmatively misadvised him that he was not eligible for relief from deportation. *See supra* at 11-

18   14.

19                                   **b.  Prejudice**

20       As discussed above, establishing prejudice requires Cabrera-Ochoa to show that it is

21   "plausible" that he would have received relief from deportation. *Valdez-Novoa*, 780 F.3d at 914.

22   Cabrera-Ochoa argues that it is plausible that he would have received SIJS or voluntary departure,

23   and the United States argues that it is not.  The Court finds that while it is implausible that

24   Cabrera-Ochoa would have received SIJS for the reasons previously mentioned, it is plausible that

25   he would have received voluntary departure. *See supra* at 11-13.

26       There are two separate issues to address: whether Cabrera-Ochoa was eligible for

27   voluntary departure, and if eligible, whether it is plausible he would have received it.  The United

28   States argues that Cabrera-Ochoa was statutorily barred from receiving post-conclusion voluntary

1    departure because he was not present in the United States for at least one year before being served

2    with the 2008 NTA. *See* Opp. at 10 n.4, ECF 48 (citing 8 U.S.C. § 1229c(b)(1)(A)). This is true,

3    but the one-year requirement applies only to post-conclusion voluntary departure, and pre-hearing

4    voluntary departure[5] has no such bar. *See* 8 U.S.C. §§ 1229c(a)(1), (b)(1)(A). The Court now

5    turns to plausibility.

6         Showing plausibility requires more than showing that it is "merely conceivable or possible,

7    that an IJ would have granted the relief." *Valdez-Novoa*, 780 F.3d at 914. The Ninth Circuit

8    "expressly reject[s] the contention that relief is 'plausible' whenever an IJ could have granted the

9    relief at issue without abusing his discretion." *Id.* The factors relevant to an IJ's decision to grant

10   voluntary departure are the alien's negative and positive equities. *See Matter of Gamboa*, 14 I. &

11   N. Dec. 244, 248 (BIA 1972). The negative equities include "the nature and underlying

12   circumstances of the deportation ground at issue; additional violations of the immigration laws;

13   the existence, seriousness, and recency of any criminal record; and other evidence of bad character

14   or the undesirability of the applicant as a permanent resident." *Matter of Arguelles–Campos*, 22 I.

15   & N. Dec. 811, 817 (BIA 1999). The positive equities "are compensating elements such as long

16   residence here, close family ties in the United States, or humanitarian needs." *Id.*

17        The Government makes several arguments that voluntary departure was implausible:

18   ████████████████████████████████████████████; he had unlawfully reentered the

19   United States after his 2007 removal; he was arrested twice after returning to the United States and

20   those arrests were recent at the time of his 2008 hearing; he had been affiliated with a gang; he

21   lacked stable employment; and he lacked any positive equities. *See* Opp. at 17-19, ECF 48. The

22   United States cites *Valdez-Novoa* and two BIA cases as examples where respondents with more

23   positive equities and similar or less severe negative equities were denied voluntary departure. *See*

24   *id.* at 19-21.

25        Cabrera-Ochoa challenges the Government's characterization of the equities. He first

26

27   ---
     [5] Pre-hearing voluntary departure under 8 U.S.C. § 1229c(a)(1) might more accurately be called
28   "pre-conclusion" voluntary departure, because it is available prior to the "completion" of removal
     proceedings. *See* 8 U.S.C. § 1229c(a)(1).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    notes that the record in 2008 was similar to that in 2007, and in 2007, he received post-conclusion

2    voluntary departure, which is more difficult to obtain than pre-hearing voluntary departure,

3    making it plausible that he would have received voluntary departure in 2008. *See* Reply at 9-10,

4    ECF 49. He also points out that in 2008, the IJ identified the 8 U.S.C. § 1229c(c) bar as the only

5    reason for denying voluntary departure. *See id.* He also argues that ███████████████

6    ████████████████████████████████████████, and that his

7    2008 arrests should not be considered because they were dismissed. *See id.* at 10-11. He also

8    cites BIA decisions finding that aliens have received voluntary departure after illegally reentering

9    the country, and cases affirming grants of voluntary departure to aliens with significant, violent

10   criminal records and gang histories. *See id.* at 13; Supplemental Brief at 2, ECF 50. Finally, he

11   argues that he had lived in the United States since he was a child; he had attended school in the

12   United States; ███████████████████████████████████████████

13   ███████████████████████; he lacked any other support in the United States or Mexico; he had

14   no criminal convictions; ████████████████████████████████████████

15   ███████████; and he could not legally have worked in the United States because he lacked a

16   work permit. *See* Reply at 9-10, ECF 49.

17        After considering all the equities and arguments presented by the parties, the Court finds it

18   plausible that in 2008, Cabrera-Ochoa would have received a second grant of voluntary departure.

19   In 2007, the IJ was faced with most of the positive and negative equities currently identified by

20   both parties, and granted Cabrera-Ochoa voluntary departure, and in 2008, the record was not

21   significantly different. The differences between 2007 and 2008, as highlighted by the

22   Government, were that Cabrera-Ochoa had illegally reentered the country and been arrested twice.

23   *See* Opp. at 17-19, ECF 48. After the first arrest, he was charged with vehicle theft, and after the

24   second arrest, he was charged with participating in a criminal street gang, promoting a criminal

25   street gang, possession of a dangerous weapon, and possession of stolen property. *See* Rap Sheet

26   at 6, Def.'s Ex. K, ECF 39-1. According to Cabrera-Ochoa's rap sheet, all charges relating to the

27   second arrest were dismissed; no disposition is provided for the first arrest. *See id.*

28        Regarding Cabrera-Ochoa's illegal reentry in 2008, the Court finds that it would not have

25

United States District Court
Northern District of California

1   weighed strongly against a second grant of voluntary departure. The Government cites an

2   unpublished BIA decision affirming an IJ's finding that an illegal reentry subsequent to a grant of

3   voluntary departure was a "substantial adverse factor[]." *In Re: Jose Rojel Nava*, 2010 WL

4   5559177, at *1 (DCBABR Dec. 20, 2010); *see* Opp. at 18, ECF 48. However, other unpublished

5   decisions cited by the Government show that voluntary departure may be granted after an illegal

6   reentry subsequent to a prior grant of voluntary departure. *See In Re: Luis Bernardo Hernandez*,

7   2016 WL 946729, at *2 (DCBABR Feb. 10, 2016) (affirming denial of an eleventh grant of

8   voluntary departure, but noting that respondent received ten grants of voluntary departure, and

9   each time illegally reentered); *In Re: Miguel Alberto Ornelas-Caro*, 2015 WL 799752, at *2

10  (DCBABR Jan. 13, 2015) (affirming denial of a third grant of voluntary departure, but noting that

11  respondent received two grants of voluntary departure, and each time illegally reentered); Opp. at

12  18, ECF 48. As of the 2008 removal hearing, Cabrera-Ochoa had illegally reentered only once,

13  and this is not in itself a strongly negative equity.

14          As for the 2008 arrests, the 2008 IJ would have been able to consider them, but they would

15  have received only little weight. In *Paredes-Urrestarazu v. U.S. INS*, the Ninth Circuit held that

16  the BIA could consider an alien's narcotics arrest as a factor in adjudicating a request for

17  discretionary relief from deportation, even though the arrest never resulted in a conviction because

18  the underlying charges were dismissed. 36 F.3d 801, 810 (9th Cir. 1994). "The fact of arrest,

19  insofar as it bears upon whether an alien might have engaged in underlying conduct and insofar as

20  facts probative of an alien's "bad character or undesirability as a permanent resident" arise from

21  the arrest itself, plainly can have relevance." *Id.* The BIA cited *Paredes-Urrestarazu* in a

22  precedential opinion holding that when an alien's conduct "results in his having had contact with

23  the criminal justice system or being placed in criminal proceedings, the nature of those contacts

24  and the stage to which those proceedings have progressed should be taken into account and

25  weighed accordingly." *Matter of Thomas*, 21 I. & N. Dec. 20, 24 (BIA 1995). In *Arreguin de*

26  *Rodriguez*, the BIA cautioned that it was "hesitant to give substantial weight to an arrest report,

27  absent a conviction or corroborating evidence of the allegations contained therein." 21 I. & N.

28  Dec. 38, 42 (BIA 1995). In *Arreguin de Rodriguez*, the applicant had admitted to no wrongdoing,

1  and so the BIA gave the arrest report "little weight." *Id.*

2       In light of *Paredes-Urrestarazu* and the BIA cases, the Court finds that an IJ would have

3  been able to consider Cabrera-Ochoa's 2008 arrests, but would have given them only little weight.

4  Cabrera-Ochoa's alleged conduct resulted in him being placed in criminal proceedings, but the

5  proceedings did not progress beyond the initial stages. As in *Arreguin de Rodriguez*, the charges

6  relating to the second arrest were ultimately dismissed, and neither party has presented a record of

7  a conviction relating to the first arrest. Moreover, the charges in the 2008 arrests were

8  █████████████████████████████████████████████

9  ██████████████████████████████████████████████████

10  █████. Given that an IJ granted voluntary departure in 2007 despite Cabrera-Ochoa's juvenile

11  record—which she questioned him about at length—it is plausible that an IJ would have granted

12  voluntary departure again in 2008, since the 2008 arrests were for similar charges to those already

13  considered by the IJ in 2007, and they were only arrests, not final adjudications. *See* 2007

14  Transcript at 14-16, Def.'s Ex. O, ECF 41.

15       It is plausible that Cabrera-Ochoa would have received voluntary departure in 2008. The

16  2008 removal order is invalid under Section 1326(d).

17  **IV.   ORDER**

18       Both the 2007 and 2008 removal orders are invalid under Section 1326(d). Cabrera-

19  Ochoa's motion to dismiss the indictment is GRANTED.

20       **IT IS SO ORDERED.**

21

22  Dated: August 8, 2016

23

24                                BETH LABSON FREEMAN
                              United States District Judge

25

26

27

28

United States District Court
Northern District of California